Application of Gerhard LEHMANN-
POTTKAMPER.

Patent Appeal No. 6870.

United States Court of Customs
and Patent Appeals.
Jan. 16, 1963.

Richard E. Babcock, Jr., Watson, Cole, Grindle & Watson, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirming the rejection by the Primary Examiner of claim 15, the only remaining claim of the application Serial No. 425,226, filed April 23, 1954, for ROAD ROLLERS OF THE VIBRATORY TYPE.

Claim 15 reads:

"15. A vibratory road roller comprising a non-rotatable housing member in the form of a hollow axle and having bearing means at each end thereof, a roller rotatably mounted on said bearing means to rotate around said housing member, a shaft with eccentric weight means thereon rotatably mounted in said hollow axle and rotatable therein, a frame for the roller secured to the hollow axle, and means mounted on the frame to drive the roller and the shaft and including transmission gear means therefor."

The references relied on by the examiner and the board are:

| Kerridge | 2,671,386 | Mar. 9, 1954 |
| Wood | 2,677,995 | May 11, 1954 |
| Green | 2,745,326 | May 15, 1956 |

Appellant's application relates to a road roller of the vibratory type which is power driven and is adapted to be controlled by a pedestrian operator. The road roller includes rigid side frame members which extend longitudinally with respect to the direction of movement of the roller and between which is secured a *non-rotatable* housing member in the form of a hollow axle having bearing means at each end thereof. The roller shell itself is hollow and is rotatably mounted on the bearing means about the hollow axle. Rotatably mounted within the latter is an eccentric shaft. When rotated, the eccentric shaft transmits a vibratory movement to the roller. The roller shell and the eccentric shaft are driven by independent drive means.

Appellant in his brief states that, by interconnecting the side frame members by securing them to the hollow shaft through the axis of the roller, said shaft is caused to assume inherently the function of reenforcing the entire frame structure of the roller and, in general, to act as a cross frame member or part of the frame structure while at the same time simplifying the overall construction and expense of the machine. Moreover, appellant points out that the housing provided by the hollow axle structure insures long life of the vulnerable bearings of the vibrating unit, since it protects the rotating eccentric shaft against dust and dirt in a simple and effective manner.

Each of the Wood, Kerridge and Green patents relates to a road roller of the vibratory type. In Wood's device, a roller shell is rotatably mounted on a hollow central housing which surrounds an eccentric shaft. In operation the hollow central housing and eccentric shaft are both rotated but in opposite directions.

The Green roller includes a pair of aligned roller shells rotatably mounted on a transverse cross-bracing framework. The mounting means for each roller shell includes spaced, hollow, non-rotatable members fixed to the frame. These non-rotatable members, which are fixed relative to each other, comprise, in effect, a hollow, non-rotatable shaft in which rotating shafts for the eccentric weights are mounted. The roller shell is journaled upon those non-rotatable members which form the roller axle.

The Kerridge patent shows a road roller in which the roller shell is mounted to rotate about a rotatable eccentric shaft. Independent drive means are provided for the roller shell and eccentric shaft.

It was the examiner's position that "no invention" is involved in providing Wood with the independent drive means of Kerridge since stationary housings enclosing a rotatable shaft are old as shown in Green or in providing Kerridge with a housing around his rotating eccentric shaft as would be suggested by Wood.

The board affirmed the rejection of the claims on the three references. It took the position that in view of the disclosures of Kerridge, Green and Wood, only choice and machine design are involved in rotatably mounting Kerridge's eccentric shaft in, and his roller shell on, fixed hollow axle members similar to Green's hollow axle members. Further, the board regarded Green's fixed bridging members surrounding the rotatable eccentric shaft as suggesting use of a housing means connecting the axle means within the roller. While the board conceded that Green's fixed bridging non-rotatable members do not form a closed housing, it was of the opinion that only

an immaterial matter of choice would be involved in forming the housing members in Green as a closed housing, particularly in view of the closed housing shown in Wood.

Our task is to decide whether one with ordinary skill in the art at the time of appellant's invention and with knowledge of the cited references would be able to construct appellant's vibratory road roller. We are of the opinion that this question must be answered in the affirmative.

There are several features upon which appellant seeks to predicate patentability. However, we believe that one skilled in this art with the teachings of the references could construct appellant's invention without the benefit of appellant's disclosures.

Kerridge, Green and Wood all disclose eccentric axles. Kerridge teaches the double driving means, one to propel the eccentric shaft and the other the roller shell. Green also teaches that the bearing housing is firmly attached to the frame of the roller. To be sure, Wood's housing rotates and Green's is not closed. However, it is not unreasonable to assume that the element of rigidity which appellant's non-rotatable hollow axle achieves would be apparent from Green's construction and the protecting functions of a closed housing would be seen in Wood. As a matter of fact, it is not beyond the knowledge of a skilled artisan in this field without outside teaching to know that the bearings of a shaft can be protected from dust and dirt by enclosing them in a housing. Furthermore, claim 15 does not call for a closed housing but merely "a non-rotatable housing member in the form of a hollow axle," which could be either dirt proof or not.

Appellant argues that to modify Kerridge by Green and Wood, would "involve a complete reconstruction and reorganization of the primary reference." We do not agree with this contention. All of the basic concepts of appellant's invention are found in these three references and one of ordinary skill in this

art with the desire to achieve rigidity would recognize that he could mount the bearing housing and trunnion of Kerridge onto the frame of the rollers in non-rotatable relationship as disclosed by Green and enclose the Kerridge eccentric shaft in a hollow axle as suggested by both Green and Wood. The mobile characteristic of Wood's housing does not preclude it from teaching the art to enclose an eccentric shaft in a *closed* housing with all the advantages of such a construction. We think that after providing Kerridge with a stationary housing as suggested by Green, the mechanic of ordinary skill would also find it obvious to make that housing closed as suggested by Wood.

In view of the foregoing we affirm the decision of the board.

Affirmed.